UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 7:12-112

WILLIAM FERRELL,  )
    Plaintiff,  )
                                        )      **OPINION AND ORDER**
v.  )
                                        )
LIBERTY MUTUAL GROUP, INC. and  )
LIBERTY INSURANCE CORPORATION )
    Defendants.  )

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on two motions filed by the defendant Liberty Insurance Corporation (DE 52 and 53). The first motion seeks to exclude the testimony of plaintiff's building expert. The second seeks to disqualify plaintiff's counsel.

**I.    Background**

Plaintiff's house in Harold, Kentucky was damaged in a fire. The defendant Liberty insured the house. Pursuant to the policy, Liberty has paid plaintiff $295,719.16, which it asserts was the actual cash value of the house at the time of the damage. (DE 24-1, Mem. at 2.) Plaintiff asserts the actual cash value was higher.

Plaintiff's complaint asserts a claim for replacement cost, not actual cash value. In the pleadings on summary judgment, however, both parties treated the complaint to also assert a claim for actual cash value. In its summary judgment opinion, this Court dismissed any claim for replacement cost, agreeing with both of the parties that the replacement-cost claim was not ripe because plaintiff had not rebuilt the house. Nevertheless, because, in their summary judgment motions, the parties argued about the actual cash value of the

house and had taken discovery on the issue, the Court construed the complaint to assert a claim for actual cash value.

## II. Analysis

There are three individuals central to these motions. The first is Austin Mehr, plaintiff's counsel. The second is Mike Cottrell, plaintiff's retained expert regarding the cost to rebuild plaintiff's house. And the third is Mike Warner, who Liberty retained as an expert but will not be testifying on its behalf. All three live in the same neighborhood.

Cottrell and Warner each did estimates regarding the cost to rebuild plaintiff's house. Plaintiff argues that actual cash value can be determined by replacement cost less depreciation. (DE 54, Response at 1.) Liberty does not dispute that. Accordingly, informed estimates regarding the rebuilding cost are relevant to this dispute.

Liberty's motions to disqualify plaintiff's counsel and to exclude Cottrell's testimony are both based, at least in part, on the fact that, in developing his estimate, Cottrell used Warner's estimate. There is no dispute about this. In his deposition, Cottrell testified:

> My estimate was based on two things. I had a preliminary sketch of the site plan and house. I had some photographs. I also had a friend who is also a builder that also bid the job, and I received his bid.

(DE 52-6, Cottrell Dep. at 6.)

Cottrell testified that, in formulating his own estimate, he used Warner's estimate. (DE 52-6, Cottrell Dep. at 52.) He testified that he compared "what [Warner] plugged into the amount of certain items that he had calculated and whether or not I thought they were high or low or the same." (DE 52-6, Cottrell Dep. at 52.) Cottrell testified that it took him a total of two hours to prepare his estimate. (DE 52-6, Cottrell Dep. at 36.)

As to how Cottrell received Warner's estimate, in response to the motion to disqualify, Mehr states that "Warner picked up the phone and contacted counsel to advise that Liberty had hired him and decided not to use Warner as a testifying expert since

Warner's estimate supports Plaintiff's position." (DE 55-Response at 10.) Mehr also states in the response that Warner advised him during the conversation that "he had performed said estimate for Liberty." (DE 55, Response at 2-3.) Mehr states in his affidavit that he asked Warner in this conversation if Liberty told him to keep his opinions confidential and that Warner said it had not. (DE 54-4, Mehr Aff.)

After Mehr's conversation with Warner, Mehr told Cottrell that Warner had prepared an estimate to rebuild the house. (DE 52-6, Cottrell Dep. at 52.) Cottrell testified that he told Mehr that he (Cottrell) would call Warner and "ask him about it, and that's what I did." (DE 52-6, Cottrell Dep. at 51-52.) Cottrell testified that Mehr did not tell him that he could not contact Warner. (DE 52-6, Cottrell Dep. at 51.) Cottrell testified that he did not know if he requested Warner's estimate or if Warner volunteered to give it to him. (DE 52-6, Cottrell Dep. at 51-52.) Cottrell also testified that, at the time he obtained Warner's estimate, he believed that Warner had done the estimate for Liberty. (DE 52-6. Cottrell Dep. at 52.) He testified that he gave Warner's estimate to plaintiff's counsel after obtaining it. (DE 52-6, Cottrell Dep. at 53.)

After Warner provided his estimate to Cottrell, plaintiff sent discovery requests to Liberty asking Liberty to "[a]dmit that you have obtained an expert opinion that supports payment in full of the remaining policy limits." (DE 53-5, Pf.'s Interrogatories and Request for Documents.) Plaintiff's counsel Mehr later sent an e-mail to Liberty's counsel stating:

> Will you admit whether or not you have obtained a builder to opine that the replacement costs exceeds the policy limits even after subtracting depreciation? I find it impossible to believe that you and your company have not. . . obtained, by now, a rebuild estimate . . . I am betting that you have not disclosed one yet because the one you have is too high for your Company to then justify its denial. I'll bet you dinner and drinks on that."

(DE 53-8, Mehr E-mail.)

3

During discovery, plaintiff provided certain documents from Cottrell's file to Liberty including Warner's estimate. (DE 55, Response at 3.)

Federal Rule of Civil Procedure 26(b)(4)(D) provides that "[o]rdinarily, a party may not, by interrogatories or depositions, discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." The rule provides an exception for medical examinations under Rule 35(b) and "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means. Fed. R. Civ. P. 26(b)(4)(D)(i),(ii).

"Courts have interpreted exceptional circumstances to mean that the party cannot obtain equivalent information from another source." *Precision of New Hampton Inc. v. Tri Component Prods. Corp.*, No. C12-2020, 2013 WL 2444047, at *3 (N.D. Iowa, June 5, 2013). Courts have found "exceptional circumstances where the object or condition at issue cannot be observed by experts of the party seeking discovery." *Id.* Plaintiff does not argue that any such circumstances exist in this case. Nor does the Court find any. Thus, plaintiff could not have obtained Warner's estimate through formal discovery.

The Court has been unable to locate any cases, like this one, where one party's expert obtained the report of the opposing party's non-testifying expert through some means other than discovery and then used that report in developing his own opinion. In determining whether such conduct should be permitted, the Court will look to the rule's purpose.

The rule is intended to 1) "promote fairness by precluding a party from using an opponent's expert to build his own case;" 2) "prevent a party from benefitting from the effort expended and costs incurred by the opposing party while preparing for litigation;" and 3) protect an "important interest in allowing counsel to obtain the expert advice they need . . .

4

without fear that every consultation with an expert may yield grist for the adversary's mill." *Precision*, 2013 WL 2444047, at *3 (quoting *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y.1995)). For this reason, the rules "set a high barrier for discovery of a non-testifying expert's opinions," allowing such discovery only for medical examinations and "exceptional circumstances." *Id.*

The issue in *Zvolensky v. Ametek, Inc.*, No. 96-4342, 1998 WL 124047, at *2 (6th Cir. 1998) was whether the plaintiff could call the defendant's non-testifying expert at trial. The Sixth Circuit noted that one purpose of Rule 26(b)(4)(D) was to "allow a party to feel free to hire and consult with such experts without risking exposing certain information to the opposing party." *Id.* at 2. The court determined that the "same reasoning would apply to prevent the opposing party from calling as a witness at trial that same expert." *Id.*

The same reasoning should also apply here to prevent plaintiff from calling his own expert at trial to provide an opinion that utilizes the report of the defendant's non-testifying expert. Permitting a party to use the opposing party's expert report to build his own case would deter litigants from consulting with experts for fear that the information obtained could ultimately be used against them.

As discussed, Rule 26(b)(4)(D) is also intended to prevent one party from profiting from "an adversary's retention and financing of an expert." *Genesco, Inc. v. Visa U.S.A., Inc.*, 2014 WL 935329, at *24 (M.D. Tenn. 2014). That is precisely what occurred when plaintiff's expert used Liberty's non-testifying expert's opinion to build plaintiff's case.

Ferrell argues that Cottrell's opinion should not be excluded because Ferrell did not seek Warner's report through discovery but instead Warner "voluntarily provid[ed] his report to Cottrell." (DE 54, Response at 14.) In *Healy v. Counts*, 100 F.R.D. 493 (D. Col. 1984), however, the court determined the rule prevents one party from calling the opposing party's non-testifying expert even where the identity of the expert is discovered "without

5

chicanery and without the discovery process" but instead by "happenstance." *Id.* at 495, 496. The court determined that permitting use of the opponent's non-testifying expert where the expert's opinion is obtained through happenstance instead of discovery "is an invitation to permit 'happenstance' to replace the formal strictures of discovery." *Id.* at 497.

There is no doubt that plaintiff could not have obtained Warner's report through formal discovery. Thus, under Rule 26(b)(4)(D), plaintiff clearly could not have used the report to build his own case. Permitting parties to use the reports where they obtain them by some means other than discovery would only encourage parties to circumvent the discovery rules.

Ferrell also argues that Cottrell's use of Warner's estimate to prepare his own was not improper because Liberty never told Warner that his bid should remain confidential. (DE 54, Response at 10.) The Court's ruling, however, is not based on the bad intent of Cottrell or Warner. The Court's ruling is based on the intent of Rule 26(b)(4)(D). Permitting a party to use the report of his opponent's non-testifying expert to establish his own case would violate the spirit and intent of the rule.

The Court will therefore grant Liberty's motion to exclude Cottrell's opinion. As to Liberty's motion to disqualify plaintiff's counsel, after Cottrell told Mehr that Cottrell would ask Warner about his bid, Mehr most certainly should have told Cottrell that he could not do that. Nevertheless, the Court finds that an appropriate remedy is exclusion of Cottrell's testimony. Accordingly, the motion to disqualify counsel will be denied as moot.

Plaintiff moves for leave to file a sur-reply (DE 58). In that motion, he argues that Liberty took an *ex parte* deposition of Warner and submitted the deposition transcript with its reply briefs. He further argues that Warner's deposition contradicts plaintiff's statement of facts. Plaintiff does not identify which facts are contradicted. Regardless,

plaintiff has not disputed any of the facts that this Court has relied on and set forth in this opinion. Accordingly, the motion to file a sur-reply will be denied.

Plaintiff also moves for an oral argument on these motions (DE 59). His motion consists of one sentence. As stated, the Court has relied on undisputed facts in forming this opinion. Accordingly, the Court sees no need for oral argument and plaintiff provides none. The motion for oral argument will be denied.

For all these reasons, the Court hereby ORDERS as follows:

1) Liberty's Motion to Exclude Cottrell's testimony (DE 52) is GRANTED;

2) Liberty's Motion to Disqualify plaintiff's counsel (DE 53) is DENIED as moot;

3) Plaintiff's Motion for Leave to File a Sur-Reply (DE 58) is DENIED;

4) Plaintiff's Motion for Oral Argument (DE 59) is DENIED; and

5) Within 14 days of this order, the parties SHALL FILE a joint status report setting forth suggested dates for the pre-trial and trial of the plaintiff's breach-of-contract claim and stating whether they would prefer the trial of this matter to occur in Pikeville or Lexington, KY.

Dated July 18, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY